was the first case to be argued today. Okay. USA v. Donato, 20-2280 and 20-2307. Ms. Catherine? Good morning, Your Honors. I represent, I'm sorry, good afternoon. I represent Anthony Donato on appeal from the District Court denial of compassionate release. The District Court denied release in this case under the old inapplicable standards from the guideline commentary before the Brooker decision came down. Brooker held that guideline 1B.1.13 does not apply to motions brought directly by the defendant under the First Step Act. The District Court's discretion under the act is broad and not limited by the guideline or its commentary. But the District Court in this case relied on this very commentary as limiting relief to circumstances in which the defendant is suffering from a terminal illness or a serious physical or medical condition that substantially diminishes the ability to provide self-care. Application of the wrong standard led the court to ignore Mr. Donato's exceptional rehabilitation record and his family circumstances and to minimize his vulnerability to COVID-19 because it did not rise to the level of the guideline. We ask the court to remand this case for reconsideration in light of Brooker and the correct legal standards. Now the government argues that the District Court was not really constrained because it considered Mr. Donato's medical conditions and the pandemic. But the District Court explicitly stated that compassionate release was limited to the circumstances in the guideline commentary and spelled out those limitations. We must take the court at its word. It considered Mr. Donato's medical conditions and the pandemic, but only in the context of those guideline limitations. Indeed, this is what the government asked the court to do. The government argued that the guideline commentary limited the circumstances for release, and that was in its submission appendix 132. The government allowed that the pandemic had altered which medical conditions could be considered, but it contended that only those inmates listed as vulnerable by the warden at Danbury were at serious enough risk. The government was basically arguing that the BOP still determined what qualified as serious, exactly what the First Step Act eliminated. The court agreed and also denied relief on the ground that Mr. Donato was not 65, the age group determined to be vulnerable by the BOP. This is also the same age cutoff as is specified in the commentary. The court's analysis of the medical issue was driven by the commentary, as it clearly stated in its opinion. Moreover, the court did not consider either Mr. Donato's family circumstances or his exceptional rehabilitation, no doubt because they were not allowed by the guideline commentary that the court explicitly followed. Excuse me, your first two minutes have expired. Okay, shall I continue? Yes, go ahead. Okay, so the government argued that Mr. Donato's family circumstances were nowhere near the level required by the guideline, death or incapacitation of a caregiver, and this is at appendix 137 in the government's submission where it argued it was nowhere near the level required citing a case that held that the guideline controlled, which is it has to be the death or incapacitation of a caregiver or spouse. Now, this was true under the guideline, this is true, but that's not the standard anymore under Brooker. That's why this court should remand the case for reconsideration under the correct standard explained in Brooker. Now, also, this particular court has continued, you know, even after Brooker to apply the guideline in commentary. It did so in Manzelli, a case that's cited in our brief in which it actually granted compassionate release, but under that standard, under the guideline standard, and it did so again in February. I sent the court yesterday, United States versus Johnson, still applying the guideline limitations to a compassionate release motion. So, for this reason, we think of a remand with instructions. Isn't it fair to say, though, that the judge did not adhere to the guidelines, to the old rules, that the judge considered deep factors outside of the limitations that were spelled out there? Well, I don't think it is fair to say that, Your Honor, because the court, the argument is that because it considered Mr. Donato's vulnerabilities to the pandemic, that that was outside the guideline, but that wasn't outside the guideline. The government told the court that it could consider a broader range of medical conditions, but they had to be serious enough to qualify under the guidelines still, so that it wouldn't necessarily be something that was going to cause imminent death on its own, but considering that it would make someone more vulnerable to death under the conditions of COVID, it could be considered, but it still had to satisfy that standard, and that's what the court did. The court considered, as it did in Mongeli, where it actually found that it rose to that level, the court considered whether Mr. Donato's vulnerabilities to COVID were sufficient to qualify under that guideline standard, and that was a mistake, because the court under Brooker could consider his vulnerability to serious illness or death under a lesser standard than whether it was a terminal medical condition. It could also consider his age, even if it wasn't 65, even if it was 62, that reflected a higher degree of vulnerability, and it could also consider his extraordinary rehabilitation and his family circumstances, which were argued, and there was a detailed presentation on these particular factors, which the court just completely ignored. It only addressed COVID because it was told by the government that under the guideline, it could still consider the COVID situation, but it was a very, very, very high standard, but that it should not consider these other issues, so that's what the court did. Didn't he also take into account and place great reliance on the Section 355-3 factors, and particularly the seriousness of the offense? I mean, we're talking about a violent murder here, and that can outweigh, and he found that that could outweigh even the most serious medical conditions. Well, it didn't actually weigh it, Your Honor. The court considered the 355-3A factors. It said it was considering the 355-3A factors, but considered only one factor. The only factor it considered was the nature of the offense. Well, you're saying that's the only one he articulated, and I think we've made pretty clear that you don't have to engage in, I think the term is robotic incantations of all the factors when the judge is presumed to have considered all the factors in effect. No, but it didn't even say, Your Honor, he didn't even say, the court did not even say that this outweighs everything else. He simply said this is it. This is the end of the story. He was convicted of a violent offense. This means he's a danger to the community. Again, I think what was happening was the court was looking at the guideline, which also looks at danger to the community and nothing else, and was applying only the guideline. But in other cases where this court has upheld the 355-3A factors as an alternative ground for denying CR a compassionate release motion, there have been cases where the court weighed all the factors. Excuse me. Yes. Your eight minutes have expired. Okay, but there's one question here. What's our standard of review here? The standard review is de novo for the application of the wrong legal standard. That's de novo review. But it is plain error because Brooker hadn't come down yet when the court was applying the old standard. And it's use of discretion for the ultimate decision beyond that, if the court's looking at 355-3A factors. But I would like to point out that the other cases where the courts upheld, like Roney on 355-3A factors, the court specifically weighed all the factors, not just the offensive conviction. And this court noted that, that all of its factors were weighed. And the courts have specifically stated this is an alternative ground. This is definitive. The court didn't even say that. It just said also the 355-3A factors do not support the request. It was kind of an add-on. But it didn't say that that outweighed everything because it didn't even consider the rehabilitation evidence. Thank you. Well, Ms. Cassidy, to follow up on Judge Walker's question, is it not the case that we ordinarily presume in the absence of contrary evidence that the district court faithfully discharged its duty to consider all relevant evidence? Well, Your Honor, I think that is the case when there's nothing in the record that jumps out to contradict that. But in this case, there is. I mean, there's this lengthy statement of the legal standard, which is the wrong legal standard. And the judges, you know, of course, he didn't know because even though some courts were holding that there was discretion, a lot of courts were holding that there wasn't any discretion to go beyond the guidelines. And he was applying the guidelines standard. So here it's clear that he applied the wrong legal standard because he said so. To follow up again on Judge Walker's question, if he had simply said that I'm considering all relevant factors and didn't go into any detail, you wouldn't have any objection. The problem here. Go ahead. I think I would have an objection. I don't think the court can just say I'm considering all the legal factors and that's the end of it. And I don't I don't think this court has affirmed a weighing of the 355-3A factors on that bare bones level. More needs to be said. And, in fact, in Roney, the case, the recent compassionate release case that was affirmed, the court specified that all the factors were weighed in detail and set them out and that it wasn't just one factor. The court does require some explanation, I think. I don't think this has ever been the case that a court could just say, OK, I've considered everything and this is my sentence. This is my decision. There has to be some indication. And also here we have an indication from the record that the court wasn't operating on the right stand and wasn't really adhering to this guideline, where the one thing that's in the guideline is, you know, is whether the defendant could be a danger to the public. And instead of. OK. Well, thank you, Miss. Very much. You reserve two minutes and we'll turn to Ms. Spector. Good afternoon. And may it please the court. My name is Andre Spector and I represent the government appeal. I also represent the government below in connection with Mr. Donato's motion for compassionate release. Mr. Donato asked the district court for extraordinary relief for immediate release after serving about 15 years for decades of racketeering conduct that included two homicides. In 1985, attempted murder and a 2001 conspiracy to commit murder. The bar he has to clear today is even higher because he has to convince this court. The judge Gareth was not only abused his discretion in weighing the section 35, 53 factors, but separately, that the district court also erred and not finding extraordinary and compelling circumstances requiring Mr. Donato's release. Mr. Donato did not meet the standard below. And today he can point to no error, let alone abuse of discretion. The court can affirm as it has in other cases recently on a district court section 35, 53 analysis alone. Judge Gareth has noted that Donato committed extremely serious crimes, had served only 62% of the sentence, and did not present compelling evidence that he was not a danger to the community. That analysis is more than sufficient to affirm, particularly when coupled with a district court's oral observation that Donato had already received the below guideline sentence as agreed upon by the parties, committed an extremely willful and violent criminal act with regard to the murder of Santoro, and a separate serious act with regard to attempted murder of Nunez. And the court recalled the related trials over which it presided and had particular familiarity with the criminal enterprise and nature of the crimes. This court could also independently affirm on the extraordinary and compassionate prom. And though the district court did not have the benefit of Booker, and so it recited that language and standard that has been since aggregated by this court, its analysis did not run afoul of any of this court's decision. It appropriately focused on Donato's risk for getting COVID-19 at a time when his facility was not experiencing any outbreak, as well as Donato's risk of becoming severely ill if he did get the virus. Excuse me. Your first few minutes have expired. Thank you. As the district court noted, while Donato's health condition was, quote, serious, his facility did not then have a single active case, nor does it have one today, and there was an overall downward trend in the area. District court committed no error in finding that Donato's circumstances failed to rise to the level of extraordinary or compelling. And in fact, Donato told the district court that denying relief would amount to a death sentence because of the risk posed by the virus to him and the VOP's supposed failure to protect him. Unfortunately, he was wrong. Unless Your Honor has any questions for me, I will rest on our submission. I take it your position is, well, he didn't have the benefit of Brooker. His conduct, the judge's actions, and what he did was consistent with the discretion that that case calls for. Is that correct, Your Honor? That raises the question, though, you know, is there anything that might have been, that he might have done differently had he had had Brooker beforehand, which he didn't because it hadn't been decided. I think the only... Go ahead. I'm sorry, Your Honor. I think the only thing that would be different would be in the way that the court would lay out the standard. But I think in the application, which is really what matters, and I articulated this argument below to the court, I said, and this is Appendix 168, I said, the argument really comes down to the conditions that FCI Danbury and his vulnerability to the COVID-19 virus. And that was really the issue that we argued about, and that's the issue that the court focused on. And that would be the issue that the court would focus on today, completely consistent with this court's decision on Brooker. Now, your adversary says that he didn't properly weigh the seriousness of the offense with the considerations that go into compassionate release based on COVID and say that, you know, that trumps everything. He didn't say that. He didn't say that the seriousness of the offense, my consideration of the 355 three factors, outweighs any other mitigating circumstances. Now, I guess your answer is, well, he said it, but that's in effect what he said because of the sentence that he imposed and the reasons he imposed it. In other words, magic words are not necessary. I mean, I don't know what you, where you come out on that. You follow me? Yes, Your Honor. So I think that's exactly right. There's no requirement for the court to state, you know, that I am weighing the following factors, especially in this case where there was a lengthy oral argument. The judge said, I will consider all the arguments presented to me very carefully. Actually, I'm going to order the transcript. And then the court issued a written decision. I think there's every indication that the court did consider all the arguments presented to it and focused on what it believed was the most important thing that drove its decision, which is the extremely serious, violent crimes that stretched over a decade and a case in which the court presided over the related trials. I think it's natural for the court to focus on the things that will drive its decision and not have to say the obvious, which it implicitly did when it said, I will consider all the arguments presented to me. Well, Mr. Spector, this is Judge Cabreras. As you indicated, there was an extensive hearing. And why don't you marshal what, marshal what you think was shown at that hearing, which sustains the decision by Judge Garris. The hearing, Your Honor, was really focused on what I think is the decisive issue in this case, which is how bad is the outbreak of COVID-19 at the facility? And what is the risk to this particular defendant? I think both parties agreed that the crimes that Donato committed were extremely serious. But as my adversary noted, Judge Garris did release someone who was also a member of organized crime, and I believe it's Mongeli. And so in that case, the defendant actually had COVID-19, had cancer, and there was a very active outbreak at that facility. Those facts were not present in this case. And so I think there were some issues at FCI Danbury, which is where Donato was housed. But those issues were in the past. I think there was a downward trend at the time that we had the hearing. And fortunately today, you know, it's public. And I noted that my adversary added a screenshot in reply, showing there were some more cases in December. But today there are no cases. There are no active cases. And there were no active cases at the time the judge decided this decision. So I think the hearing really focused on the risk to Donato of getting COVID-19, becoming seriously ill from it, and potentially, as Donato said, even dying from it. And so I think we presented compelling evidence that the risk wasn't as great as he suggested, and that the BOP was taking proper measures to protect Donato. And Judge Garifuss was convinced of that, and particularly weighing the seriousness of the offenses, decided that he did not qualify under the extraordinary and compelling prong, and separately did not meet the Section 3553A factors. How old was the defendant? How old is the defendant now? He was 62, I believe. He was 62 at the time of the hearing. I believe he's now 63. Uh-huh. Didn't the judge indicate that that was of an age in which he could still go back to crime? It's not like he was 90 years old. That's exactly right. And I think that's important, particularly when it comes from Judge Garifuss, who has presided over multiple Bonanno crime family trials and having overseen supervised release violations from other Bonanno crime family members, knowing that while in other crimes, violent crimes, you may start to age out of certain crimes at age 40, 50. That's not the case in the organized crime world. He could easily return to that world, and there's no indication that that statement is somehow an error. Is there anything in the record that shows that the district judge considered evidence of Donato's rehabilitation in its Section 3553 evaluation? So I don't think the judge explicitly noted it, but I think that's in part because we conceded it, that he had a clean disciplinary record. I would just add that in the analogous context, and I think this is a decision actually authored by Judge Cabranes and in which Judge Walker joined the United States versus Mamouni, this court explained that having a clean disciplinary record is something that is expected of inmates. It can't, in the sentencing context, serve as a huge mitigating factor to justify a downward departure. I think those who hear, it can't be the reason that an extraordinary remedy is granted and the person who has been involved in two murders immediately released. But that was a fact that was conceded by us, so it's not surprising that Judge Garifuss didn't discuss it in his opinion. Excuse me, your 10 minutes have expired. Thank you. Unless your Honor has any questions, I will rest. Thank you, Mr. Inspector. Ms. Cassidy, you reserve two minutes. Yes, I have several points. First, Mr. Donato did not just have a clean record. Mr. Donato had an exceptionally strong prison record such that he had been selected for release to home confinement by the prison employees who managed him. His unit and case managers had told him to pack his bags in April. He was going home. After the Attorney General Barr's memo came out to please release as many people as possible to home confinement, he was selected. Not just because his record was clean, but because he had the lowest possible pattern score of whether he would be a danger. And he was placed at the minimal danger, which is the lowest possible, or the highest. I forget which way the numbers go, but he had the best possible pattern score under the DLP's own measurement. His release was nixed at the last minute because the warden had a rule that people couldn't be released to home confinement who had committed a violent crime. So, it's the same thing. The nature of the offense stopped him, and Judges were able to validate and confirm that decision by applying that one factor against him on the 3-5-5-3-A factors. Now, in terms of what was argued at the hearing, it's true that there was a lot of focus on what was going on at Danbury and the COVID, and that was the main focus. But there were several pages of discussion from A-162 to A-167, in which defense counsel argued for his rehabilitation and his family's circumstances to be weighed in with the other factors. They argued that the whole picture should be viewed by the court, and this is a man who should be released. So, that was before the court. Now, the court didn't ask any questions or say anything at the hearing, except at the end, at A-177, which this is what the government relies on when it said it would consider all the arguments. But what it said was, the court will take a very critical and careful look at the argument of the defense with regard to the possibility that Mr. Donato is at great risk of contracting the coronavirus while at FBI Danbury. And we will take into account all the arguments that have been made on both sides. So, whether the court was considering any of the arguments made about the other factors is completely unclear, or whether it's just considering the COVID arguments and all the arguments made on both sides of that argument. So, what would have the court done differently? Had he had Brooker, he would have had to consider the rehabilitation and family circumstances. There's not a word about those in the opinion, even though there was a big presentation both in the papers and at the oral argument. The court would have had to consider them and would have had to weigh them in the mix. That's what the court would do differently, if told that those must be considered. Thank you very much, Ms. Cassidy. Thank you. Thank you, Ms. Cassidy. We will reserve the decision.